**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*In re* SUBPOENA TO ANDREW PERRONG

LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

v.

DABELLA EXTERIORS LLC,

Defendant.

Misc. No. 2:26-mc-99
(Related to Misc. No. 2:26-mc-88 (JFM))

Underlying action:

United States District Court for the District of Oregon, Portland Division

Case No. 3:25-cv-00396-SI

**NON-PARTY ANDREW ROMAN PERRONG'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO QUASH SUBPOENA AND TO STAY COMPLIANCE**

Non-Party Andrew Roman Perrong moves under Federal Rule of Civil Procedure 45(d)(3) to stay and quash the subpoena that Defendant DaBella Exteriors LLC ("DaBella") issued to him on October 26, 2026 (the "Subpoena").[1] The Subpoena commands production in Lafayette Hill, Pennsylvania, so this Court is the court for the district where compliance is required. Fed. R. Civ. P. 45(d)(3)(A); MC-88 ECF 16 ¶¶ 2-3.

## PRELIMINARY STATEMENT

Three days ago, this Court dismissed without prejudice Perrong Law LLC's motion to quash DaBella's first subpoena for a video of an October 2025 doorstep visit, because that subpoena directed compliance in Oregon and Florida. MC-88 ECF 16 ¶¶ 2-3. The Court observed that DaBella "may well have simply changed the place of compliance had the issue been brought to its attention." *Id.* ¶ 4. DaBella did change the place of compliance. The same day, it reissued its requests to Plaintiff's lead counsel *personally*, at his home, with a compliance date four days away.

Mr. Perrong met and conferred with DaBella's counsel before filing. That conference narrowed the dispute to whether the materials DaBella seeks are relevant to anything in a Telephone Consumer Protection Act ("TCPA") case about telemarketing calls. DaBella offered two reasons. First, a letter Plaintiff's co-counsel sent a year ago proposed a sanctions motion based on the employees' threats. Second, and in DaBella's view more important, the video would show whether the employees were "trespassed" from Plaintiff's residence.

Neither theory supports the Subpoena. A letter between counsel is not a claim or defense, and no motion for sanctions was ever filed. A video of Mr. Perrong's interaction with the persons

[1] Citations to "MC-88 ECF" refer to the docket in *In re Subpoena to Perrong Law, LLC*, No. 2:26-mc-88 (E.D. Pa.), using ECF header page numbers. Citations to "*Weingrad* ECF No." refer to the docket in the underlying action, *Weingrad v. DaBella Exteriors LLC*, No. 3:25-cv-00396-SI (D. Or.).

who visited also cannot show whether police later trespassed them. By DaBella's own account, that interaction took place after the employees had left Plaintiff's property and before any officer arrived. MC-88 ECF 14 at 14. What the officers did is documented where police action always is, in the officers' report, the dispatch records, and body camera footage. DaBella has already obtained and filed the 911 audio. MC-88 ECF 14-3. It can obtain the rest from the police, and it can ask its own employees what the officers told them.

What remains is a subpoena aimed at investigating opposing counsel. DaBella's last brief said as much. It wants the video to determine "whether or not [Mr. Perrong's] statements to the police were accurate." MC-88 ECF 14 at 15. That is not a legitimate use of Rule 45. Courts in this District apply the *Shelton* test to discovery from opposing counsel, and DaBella cannot meet any of its requirements. The Subpoena also allows four days to comply, counted from before it has even been served, it still not having been served, and its fourth request and instructions would require counsel to comb his own litigation files and compile "evidence." The Court should stay compliance and quash the Subpoena.

## **BACKGROUND**

### **A. The Underlying TCPA Action**

Plaintiff Leon Weingrad alleges that DaBella violated the Do Not Call provisions of the TCPA, 47 U.S.C. § 227(c), by placing telemarketing calls and text messages to his telephone number, which is registered on the National Do Not Call Registry, including after he told DaBella to stop and after he filed suit. The contested merits issues concern those calls, including issues relevant to the TCPA claim, such as who made them, whether the number was registered on the Do Not Call List, and whether DaBella had consent. Mr. Perrong, through Perrong Law LLC, is Plaintiff's counsel of record. Declaration of Andrew Roman Perrong ("Perrong Decl.") ¶ 2.

The presiding judge has already rejected DaBella's effort to use a third-party subpoena to reach beyond those issues. When DaBella subpoenaed Plaintiff's employer for seventeen months of his computer use and communications and security video of him working on the day of the alleged opt in at issue, the court enforced only three requests tied to the disputed opt-in and quashed the rest, including the request for video, holding that DaBella's broader demands "tip[] too far into harassment" and were "an improper fishing expedition." *Weingrad* ECF No. 77 at 6.

**B. The October 20, 2025 Visit**

On October 20, 2025, about seven months after Plaintiff filed suit, two DaBella employees came to Plaintiff's home in Milwaukie, Oregon. Plaintiff informed Mr. Perrong, who called 911, and police responded. *See* MC-88 ECF 14-3 at 3-7. Plaintiff testified that the employees had left his property before the police were called, that the police located them, and that he heard the officers say "trespassing." MC-88 ECF 14-1 at 5, 10-11 (Weingrad Dep. 17:10-13, 22:16-25, 23:19-23). The next day, Plaintiff's co-counsel wrote to DaBella's counsel describing the incident, reporting that the police had "trespassed the two individuals," and seeking DaBella's position, in conformity with the District of Oregon's local rules, on a sanctions motion and a protective order. MC-88 ECF 14-2 at 2-3. No such sanctions motion was filed. Perrong Decl. ¶ 8. In a March 23, 2026 declaration, Plaintiff stated that the visit "resulted in the police being called and DaBella being trespassed from my residence." *Weingrad* ECF No. 54 ¶ 22. Plaintiff has not pleaded any claim based on the visit and is not pursuing one. Perrong Decl. ¶ 8.

**C. The First Subpoena and This Court's Order**

DaBella first subpoenaed Perrong Law LLC on September 17, 2026, by email, directing compliance in Oregon or Florida. MC-88 ECF 1-3. On October 26, 2026, the Court held that it was not the compliance court and dismissed the Firm's motion without prejudice. MC-88 ECF 16

¶¶ 2-3. The Court noted the Firm's "strong arguments" under Rule 45(c)(2)(A), but observed that the Firm had not met and conferred after the subpoena issued, and suggested that conferral might have resolved the dispute. *Id.* ¶ 4. It denied DaBella's request to transfer the motion to the District of Oregon under Rule 45(f) because it was not the compliance court. *Id.* ¶ 5.

### D. The New Subpoena

The same day, DaBella issued the instant Subpoena, directed to "Andrew Perrong" at his home address. Perrong Decl. ¶ 4 & Ex. A. It commands production at the Lafayette Hill office of DaBella's Pennsylvania counsel at 9:00 a.m. on October 30, 2026, four days after it issued. *Id.* DaBella emailed counsel of record a Rule 45(a)(4) notice stating that it "intends to serve" the Subpoena. *Id.* As of filing, no one has delivered the Subpoena to Mr. Perrong. *Id.* ¶ 5. Schedule A contains four requests:

> **Request No. 1**: The video taken by Mr. Perrong concerning the alleged visit by DaBella to Leon Weingrad's property on October 20, 2025.
>
> **Request No. 2**: The video taken by Mr. Perrong during his interaction with DaBella canvassers on October 20, 2025.
>
> **Request No. 3**: Any and all other videos or photographs of the alleged visit by DaBella to, Leon Weingrad's property on October 20, 2025.
>
> **Request No. 4**: Any and all non-privileged evidence regarding any allegation of violence or threatened violence by DaBella on October 20, 2025.

*Id.* Ex. A, Schedule A. The instructions require the recipient to search "not only hard copy documents, but also information within your knowledge and control," including data on "telephones, ipads," "computer servers to which you have access," "email accounts," and "text messaging accounts," and to produce electronically stored information "in its original format

complete with all metadata." *Id.*, Instrs. 1-2. "You" is defined as "Andrew Perrong, including any subsidiaries or affiliated enterprises, and its officers, directors and employees." *Id.*, Defs. 2.

### E. The Parties' Conference

On October 29, Mr. Perrong met and conferred with DaBella's counsel about the Subpoena. Perrong Decl. ¶ 6. He explained that the Subpoena seeks irrelevant and disproportionate material from opposing counsel for an improper purpose. *Id.* DaBella's counsel identified two primary grounds of relevance, the October 21, 2025 letter, and whether the employees were "trespassed" from Plaintiff's residence. *Id.* Mr. Perrong explained that the police report and body camera footage, not a video of his interaction with the employees, would show whether the police trespassed them. *Id.* DaBella did not withdraw the Subpoena. *Id.*

## LEGAL STANDARD

On a timely motion, the court for the district where compliance is required "must quash or modify a subpoena that," among other things, "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iii)-(iv). The issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must enforce this duty." Fed. R. Civ. P. 45(d)(1). A subpoena may reach only nonprivileged matter "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Weingrad* ECF No. 77 at 2. The court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). And the burden on a nonparty is entitled to "special weight." *MSP Recovery Claims v. Sanofi-Aventis U.S. LLC*, No. 2:18-CV-2211(BRM)(LHG), 2023 WL 11986907, at *2 (D.N.J. Nov. 14, 2023).

Discovery directed at opposing counsel draws heightened scrutiny. Although the Third Circuit has not formally adopted it, courts in this District apply the test of *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), which permits such discovery only where the requesting party shows that (1) no other means exist to obtain the information, (2) the information is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. *United States v. Kindred Healthcare, Inc.*, No. CV 16-00683-KSM, 2024 WL 5410444, at *6 (E.D. Pa. Nov. 13, 2024); *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, No. 15-CV-5929, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017); *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006).

## ARGUMENT

### I. THE COURT SHOULD STAY COMPLIANCE PENDING DECISION OF THIS MOTION

The Subpoena demands production at 9:00 a.m. on October 30, 2026. Although Mr. Perrong has not yet been served, Mr. Perrong has moved before that time, which makes this motion timely. *See* Fed. R. Civ. P. 45(d)(3)(A). The Court stayed compliance with DaBella's first subpoena for the same materials to preserve the *status quo*, MC-88 ECF 2; MC-88 ECF 16 ¶ 1, and the same reasons apply now. DaBella will suffer no prejudice from a stay. The materials concern a collateral event, and the four-day return date is one DaBella chose. Courts routinely stay compliance until a motion to quash is decided. *See Hone v. Wal-Mart, Inc.*, No. 14CV1006FLWDEA, 2017 WL 3401269, at *3 (D.N.J. Aug. 8, 2017); *Maximum Hum. Performance, LLC v. Sigma-Tau HealthScience, LLC*, No. 12-CV-6526-ES-SCM, 2013 WL 4537790, at *3 (D.N.J. Aug. 27, 2013).

## II. THIS COURT SHOULD DECIDE THE MOTION RATHER THAN TRANSFER IT

DaBella asked last time that the motion be transferred to the District of Oregon. MC-88 ECF 14 at 12-14. It will likely ask again. Now that this Court is the compliance court, it may transfer "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Mr. Perrong does not consent. The proponent of transfer "bears the burden of showing that such circumstances are present"; "[t]he prime concern should be avoiding burdens on local nonparties subject to subpoenas"; and "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. DaBella's own authority recognizes that transfer is appropriate "only in exceptional circumstances." *UHS of Del., Inc. v. U.S. Dep't of Lab.*, No. MC 19-168, 2020 WL 13850731, at *1 n.1 (E.D. Pa. Jan. 21, 2020) (cited at MC-88 ECF 14 at 12).

None of DaBella's prior arguments meets that standard. *First*, DaBella said the Oregon court is more familiar with the case. MC-88 ECF 14 at 13. Every issuing court is more familiar with its own case. If that were enough, transfer would be the rule rather than the exception, which is precisely the assumption the advisory committee rejected. *Second*, the issuing court has not "already ruled on issues presented by the motion." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. Its only subpoena ruling concerned a different subpoena to a different nonparty, and it rejected DaBella's overreach. *Weingrad* ECF No. 77 at 6. Deciding this motion here creates no risk of an inconsistent ruling. *Third*, the question presented is not complex, as it is a simple question of whether a recording of a collateral doorstep encounter is discoverable from opposing counsel in a case about telephone calls. *Fourth*, DaBella's reliance on *Wilson v. Freeway*,

MC-88 ECF 14 at 13-14, is misplaced. That is a different case, with a different plaintiff, before a different judge, and it has nothing to do with this Subpoena.

Finally, DaBella chose Pennsylvania. It designated its own local counsel's Lafayette Hill office as the place of compliance and addressed the Subpoena to Mr. Perrong's Pennsylvania residence. Having selected this forum, DaBella is poorly positioned to argue that this Court should not decide the dispute. That Mr. Perrong appears as counsel in the underlying action in Oregon does not change the analysis, because DaBella subpoenaed him as an individual nonparty, and Rule 45 protects nonparties where they live. Mr. Perrong resides in Pennsylvania. If the Court were nonetheless inclined to transfer, Mr. Perrong asks that the stay remain in effect pending the issuing court's decision.

## III. THE SUBPOENA SEEKS IRRELEVANT AND DISPROPORTIONATE DISCOVERY

### A. The October 20, 2025 Visit Is Not Part of Any Claim or Defense

Plaintiff's claims arise under 47 U.S.C. § 227(c) and its implementing regulations, which govern *telephone* solicitations to numbers on the National Do Not Call Registry. The elements concern those calls, including who made them, and whether a number was on the Do Not Call Registry. A visit to Plaintiff's home seven months after he sued is not a telephone call. It does not bear on any calls DaBella placed in February 2025. Indeed, DaBella itself claims its employees were simply canvassing, were part of "a general marketing effort" in Plaintiff's area, and "did not know of" him. MC-88 ECF 14 at 3. Whatever happened on Plaintiff's doorstep, it will not make any fact of consequence to the TCPA claims more or less probable.

Plaintiff has pleaded no claim based on the visit and is not pursuing one. Perrong Decl. ¶ 8. DaBella has pleaded no defense tied to it. Discovery "is not a fishing expedition for potential claims or defenses." *DeFranco v. Miller*, No. 1:20-CV-00368-SPB, 2022 WL 973267, at *3 (W.D.

Pa. Mar. 31, 2022); *see Lopez v. Mercantile Adjustment Bureau, LLC*, No. CV 18-12490, 2019 WL 2118787, at *3 (D.N.J. May 15, 2019). Plaintiff's brief reference to the visit in a declaration, *Weingrad* ECF No. 54 ¶¶ 22-23, offered to illustrate that DaBella kept contacting him after he sued, does not make every detail of the visit discoverable, much less discoverable from an individual who happens to be his lawyer.

### B. DaBella's Two Theories of Relevance Fail

#### 1. The October 21, 2025 Letter Does Not Make the Video Relevant

DaBella's first theory is that co-counsel's October 21, 2025 letter put the employees' conduct at issue. MC-88 ECF 14 at 16. It did not. The letter sought DaBella's position on possible motions, as the District of Oregon's conferral rule requires. MC-88 ECF 14-2 at 2. No motion followed. Perrong Decl. ¶ 8. A letter is not a pleading. Rule 26(b)(1) ties relevance to a "party's claim or defense," not to correspondence between counsel, and no court has been asked to decide whether sanctions are warranted. There is therefore no pending issue to which the video could be relevant. DaBella previously argued that the letter "waived" any relevance objection, MC-88 ECF 14 at 16, but it cited no authority, and nothing in Rule 26 lets a party enlarge the scope of discovery by pointing to its adversary's correspondence. To the extent DaBella wants to prove that the letter's account of the employees' threats was inaccurate, that is a dispute about counsel's out-of-court statements on a collateral matter, which is exactly the kind of inquiry the *Shelton* test guards against. *See infra* Part IV.

#### 2. A Video of the Encounter Cannot Show Whether Police Trespassed the Employees

DaBella's second and, in its view, more important theory, fails on its own terms. Whether the employees were "trespassed" depends on what the responding officers did after they arrived. Plaintiff testified that the police located the employees and that he heard the officers say

"trespassing." MC-88 ECF 14-1 at 10-11 (Weingrad Dep. 22:20-23, 23:19-23). Co-counsel's letter likewise attributed both the trespass and the finding that the employees had no solicitation permit to the police. MC-88 ECF 14-2 at 2. Requests Nos. 1 and 2, by contrast, seek video "taken by Mr. Perrong," including video taken "during his interaction with DaBella canvassers." By DaBella's account, that interaction took place after the employees had left and before the police arrived. MC-88 ECF 14 at 14. A video of that encounter cannot show what officers who had not yet arrived later said or did.

The evidence that would answer DaBella's question is available from sources that are "more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The responding officers documented their response in a police report and dispatch records and in recordings of their contact with the employees. Perrong Decl. ¶ 7. DaBella can request those records from the agency or subpoena them. DaBella has already obtained and filed the 911 audio. MC-88 ECF 14-3. And the employees were DaBella's own representatives, the very people who were allegedly trespassed. DaBella can simply ask them what the officers told them. Indeed, DaBella already contends, based on Plaintiff's testimony and the 911 call, that the employees "could not have been trespassed" from the residence. MC-88 ECF 14 at 15-16. Whatever the merit of that contention, such as, for example, by detaining the individuals at a different property and informing them that they were no longer allowed on Plaintiff's property, DaBella does not need opposing counsel's recording to make it.

### C. The Subpoena Is Disproportionate and Harassing

DaBella's own briefing reveals the Subpoena's real purpose. DaBella wants the video to determine "whether or not [Mr. Perrong's] statements to the police were accurate." MC-88 ECF 14 at 15. It describes the police response as a "manufactured 'police' event" and accuses counsel

of painting "a twisted picture." *Id.* at 3. But the accuracy of counsel's 911 call or statements to police is not an issue in this case. A subpoena designed to litigate opposing counsel's conduct on a collateral matter is not proportional to the needs of a TCPA case about telemarketing calls. It is the kind of demand that "tips too far into harassment" and amounts to "an improper fishing expedition," as the presiding judge has already held about DaBella's subpoena practice in this very case. *Weingrad* ECF No. 77 at 6.

The Subpoena's timing and form confirm the point. DaBella issued it the same day this Court ruled, addressed it to Mr. Perrong's home, and gave him four days to comply. That is not taking "reasonable steps to avoid imposing undue burden or expense" on a nonparty. Fed. R. Civ. P. 45(d)(1).

## IV. DABELLA CANNOT JUSTIFY DISCOVERY FROM OPPOSING COUNSEL

### A. The *Shelton* Test Applies, Whatever Capacity DaBella Assigns Mr. Perrong

Courts disfavor discovery directed at opposing counsel because it prolongs and increases the cost of litigation, diverts counsel from the client's case, threatens privilege and work product, and chills the attorney-client relationship. *Shelton*, 805 F.2d at 1327; *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002); *see generally Kindred Healthcare*, 2024 WL 5410444, at *6-7; *Stavropolskiy*, 2017 WL 3116284, at *3; *Patrick v. Equifax Info. Servs., LLC*, No. CV 23-4092 (CPO)(EAP), 2024 WL 4404187, at *8 (D.N.J. Oct. 3, 2024). Courts in this District quash document subpoenas to counsel on much the same grounds. *See Owen v. Audubon Field Sols., LLC*, No. 25-MC-00070, 2026 WL 459255, at *3 (E.D. Pa. Feb. 18, 2026) (quashing law firm subpoena because information was available from other sources).

Those concerns are acute here. Although the subpoena is directed to Mr. Perrong personally, Mr. Perrong is Plaintiff's lead counsel in a pending case, and DaBella's stated purpose

is to examine his personal conduct on a collateral matter. DaBella argued last time that Mr. Perrong appeared at the scene as Plaintiff's attorney and acted on behalf of his firm. MC-88 ECF 14 at 7, 17. Taken at its word, DaBella seeks discovery of counsel's activities in a pending case, which is *Shelton*'s core concern. *See Pamida*, 281 F.3d at 731. If, instead, the recording is personal, then DaBella seeks a nonparty's personal recording of a collateral event that bears on no claim or defense. Either way, the Subpoena fails.

### B. DaBella Cannot Satisfy Any *Shelton* Requirement

*First*, other means exist. The police report, dispatch records, and body camera footage document what the officers did. DaBella has the 911 audio. DaBella's employees can say what happened, and DaBella has already deposed Plaintiff about the visit. MC-88 ECF 14-1. Where other sources can supply the information, discovery from counsel is unwarranted. *Stavropolskiy*, 2017 WL 3116284, at *2-3; *Fried v. Sungard Recovery Servs.*, 164 F.R.D. 405, 406 (E.D. Pa. 1996); *see* Fed. R. Civ. P. 26(b)(2)(C)(i). *Second*, the information is irrelevant to any claim or defense. *See supra* Part III. *Third*, the information is not crucial to the preparation of the case. Nothing in the TCPA claims or DaBella's consent defense turns on what happened on Plaintiff's doorstep. *See Linerboard*, 237 F.R.D. at 384.

### C. DaBella's Fact-Witness and "Ethical Obligation" Arguments Fail

DaBella argued last time that discovery is appropriate where the "attorney is a fact witness." MC-88 ECF 14 at 18 (citing *Musko v. McCandless*, No. CIV.A. 94-3938, 1995 WL 580275, at *1 (E.D. Pa. Sept. 29, 1995), and *Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 354 (D.N.J. 1990)). But fact witness status presupposes knowledge of facts relevant to a claim or defense. *Johnston* involved counsel's participation in meetings on which the dispute turned. 130 F.R.D. at 353-54. And even where counsel witnessed relevant

events, courts in this District deny discovery unless the requesting party shows that counsel has information unavailable from the actual witnesses. *Fried*, 164 F.R.D. at 406. The actual witnesses here are DaBella's employees, the responding officers, and Plaintiff.

*Musko* is no different. There, plaintiff's counsel was present at the very psychiatric examination that led to the plaintiff's involuntary commitment, the conduct on which the complaint was based. Counsel's own statements to the defendant during that examination, and the observations underlying them, "strike at the heart of plaintiff's claim." *Musko*, 1995 WL 580275, at *1. Counsel was therefore a percipient witness to the transaction in suit. Nothing comparable is true here. The October 20, 2025 visit occurred seven months after Plaintiff sued, is alleged in no pleading, and bears on no element of the TCPA claims or DaBella's consent defense. *See supra* Part III.A

*Musko* also arose in a different posture. It resolved a party's Rule 26(c) motion for a protective order, on which the movant bore the burden of showing good cause, and it did not apply *Shelton*. *Id.* Under *Shelton*, by contrast, the party seeking discovery from opposing counsel bears the burden of justifying it. *Kindred Healthcare*, 2024 WL 5410444, at *6. Even then, *Musko* did not permit unsupervised discovery. It ordered the deposition to proceed only while the court was available by telephone to resolve any intrusion into privilege or work product. *Musko*, 1995 WL 580275, at *1. And the same court later distinguished *Musko* in *Fried*, denying discovery from plaintiff's counsel because the defendant had not shown that counsel possessed information unavailable from the actual witnesses. *Fried*, 164 F.R.D. at 406.

Nor may DaBella use a subpoena to lay the groundwork for turning Plaintiff's lead counsel into a witness on a collateral event that DaBella's own employees set in motion. The lawyer-witness rule governs advocacy at trial and applies only where the lawyer is "likely to be a necessary

witness." Pa. R. Prof'l Conduct 3.7(a); *see Caplan v. Braverman*, 876 F. Supp. 710, 711 (E.D. Pa. 1995). Cumulative testimony about a collateral event is the opposite of necessary. *See Cannon Airways, Inc. v. Franklin Holdings Corp.*, 669 F. Supp. 96, 100 (D. Del. 1987). DaBella's claim that Mr. Perrong has an "ethical and professional duty" to hand over the video, MC-88 ECF 14 at 14-15, fares no better. DaBella cited no rule of professional conduct, and none requires a lawyer to give his adversary a recording on demand. Discovery is governed by Rules 26 and 45, and those Rules do not permit the discovery sought here.

## V. THE SUBPOENA FAILS TO ALLOW A REASONABLE TIME TO COMPLY

The Court "must quash or modify a subpoena that . . . fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i). DaBella issued the Subpoena on Monday, October 26, 2026, and demanded production by 9:00 a.m. on Friday, October 30. Perrong Decl. ¶ 4 & Ex. A. That is four days from issuance, and less from any service, which has not yet occurred. *Id.* ¶ 5. To be sure, DaBella offered to extend the time for compliance, but only if the plaintiff would accede to its demand for an extension of the discovery deadline. In any event, Rule 45 does not define a reasonable time, but courts have treated fourteen days from service as presumptively reasonable, consistent with the fourteen-day period for written objections in Rule 45(d)(2)(B), and have found three days unreasonable. *Fed. Trade Comm'n v. Thomas Jefferson Univ.*, No. CV 20-01113, 2020 WL 3034809, at *3 (E.D. Pa. June 5, 2020); *Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc.*, No. 11-CV-1665, 2011 WL 5429005, at *7-*8 (E.D. Pa. Nov. 7, 2011). A four day window leaves no meaningful time to object and seek relief. That defect independently requires the Court to quash or modify the Subpoena.

## VI. REQUEST NO. 4, THE INSTRUCTIONS, AND THE DEFINITION OF "YOU" ARE IMPROPER ON THEIR FACE

*Request No. 4.* A subpoena must command production of "designated documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(A)(iii). Request No. 4 instead seeks "[a]ny and all non-privileged evidence regarding any allegation of violence or threatened violence." That is not a category of documents. It is a demand that an individual who happens to be Plaintiff's counsel decide what counts as "evidence" of an "allegation" on a topic of DaBella's choosing. Counsel's selection and compilation of materials bearing on an issue reveals counsel's mental impressions and is protected opinion work product. *Sporck v. Peil*, 759 F.2d 312, 316-17 (3d Cir. 1985). Responding would require Mr. Perrong to search and review his files in active litigation while simultaneously representing Plaintiff in litigation against DaBella. Perrong Decl. ¶ 9. And the "allegation" the request presupposes appears in no pleading. *Id.* ¶ 8.

*The Instructions.* Instruction No. 1 requires the recipient to search for "information within your knowledge." A document subpoena cannot compel a nonparty to disclose what he knows. That would be testimony, which the Subpoena does not command, *see* Fed. R. Civ. P. 45(d)(2)(A), or an interrogatory, which may be served only on a party, Fed. R. Civ. P. 33(a)(1). For a litigating lawyer, Instruction No. 1's directive to search "telephones," "email accounts," "text messaging accounts," and "computer servers to which you have access" would also sweep in the files of active litigation against DaBella. Instruction No. 2 demands electronically stored information "in its original format complete with all metadata," which for mobile device video would include precise geolocation and other device data irrelevant to any claim. Rule 45 requires production only in a form in which the information "is ordinarily maintained or in a reasonably usable form." Fed. R. Civ. P. 45(e)(1)(B)-(C).

*The Definition of "You."* The Subpoena defines "you" as "Andrew Perrong, including any subsidiaries or affiliated enterprises, and its officers, directors and employees." An individual has no subsidiaries, officers, or directors. The only "affiliated enterprise" is Perrong Law LLC, so the definition subpoenas the Firm again through the back door, notwithstanding this Court's dismissal of the first subpoena and the Firm's sworn statement that it holds no responsive material. MC-88 ECF 1-2 ¶ 9. It also reaches the Firm's employees, who are not the Subpoena's recipient.

## VII. MR. PERRONG HAS NOT BEEN SERVED

"Serving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1); *see Hamilton v. Radnor Twp.*, 662 F. Supp. 3d 536, 541 (E.D. Pa. 2023). DaBella's notice states only that it "intends to serve" the Subpoena, but no copy has been delivered to Mr. Perrong, and he has not agreed to accept service by email. Perrong Decl. ¶¶ 4-5. Until he is served, no obligation to comply arises. *See* Fed. R. Civ. P. 45(g) (contempt available only against a person who, "having been served," fails to obey). Mr. Perrong moves now, before the stated compliance time of 9:00 a.m. on October 30, 2026, so that his objections are timely whenever service occurs and so that the Court can resolve the merits rather than service. Because the Subpoena fails on its merits, the Court need not reach any question of service. Should DaBella again ask the Court to treat this motion as an acceptance of service, *see* MC-88 ECF 14 at 25, the Court likewise need not reach that request.

## **<u>CONCLUSION</u>**

For these reasons, the Court should stay any obligation to comply with the Subpoena pending decision of this Motion and quash the Subpoena in its entirety. Because of DaBella's continued conduct, the Plaintiff further respectfully requests that this Court prohibit DaBella from

issuing further subpoenas directed to the materials sought here without first obtaining leave of Court.

Dated: October 29, 2026

Respectfully submitted,

/s/ Andrew Roman Perrong
Andrew Roman Perrong (PA Bar No. 333687)
1669 Edgewood Rd., Suite 218
Yardley, PA 19067
Telephone: 215-225-5529
Facsimile: 888-329-0305
a@perronglaw.com
*Non-Party, pro se*