**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

In re SUBPOENA TO ANDREW PERRONG

LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

vs.

DABELLA EXTERIORS LLC,

Defendant.

Misc. No. 2:26-mc-99
(Related to Misc. No 2:26-mc-88)

Underlying Action:

United States District Court for the District of Oregon, Portland Division
Case No. 3:25-CV-00396-SI

**RESPONSE IN OPPOSITION TO NON-PARTY ANDREW PERRONG'S MOTION TO QUASH SUBPOENA, FOR A PROTECTIVE ORDER, AND TO STAY COMPLIANCE**

# Table of Contents


**TABLE OF CONTENTS** ........ Error! Bookmark not defined.

**TABLE OF AUTHORITIES** ........ **ii**

**A. SUMMARY OF ARGUMENT** ........ **1**

**B. FACTUAL BACKGROUND** ........ **2**

**C. MEMORANDUM OF LAW** ........ **9**

**I. THIS COURT SHOULD TRANSFER THE MATTER TO THE OREGON DISTRICT COURT HANDLING THE UNDERLYING ACTION** ........ **9**

**II. ANDREW PERRONG HAS AN ETHICAL OBLIGATION TO RELEASE THE VIDEO OF THE DIRECT INTERACTION WITH DABELLA EXTERIORS LLC CANVASSERS ON OCTOBER 20, 2025** ........ **12**

**III. THE VIDEO IS RELEVANT TO REPRESENTATIONS MADE BY PLAINTIFF IN THE UNDERLYING ACTION** ........ **13**

**IV. ANDREW PERRONG WAS AN ACTIVE PARTICIPANT IN THE EVENTS, AND IS THE ONLY PARTY WHO TOOK A VIDEO OF THE INTERACTION.** ........ **15**

**V. THE INCONSISTENT STATEMENTS AND TESTIMONY PROVIDE A FACTUAL BASIS FOR DISCOVERY REQUESTED IN THE SUBPOENA** ........ **17**

**VI. ANDREW PERRONG IS NOT ENTITLED TO PREVENT DISCOVERY ON THE BASIS THAT THE SUBPOENA IS DIRECTED TO OPPOSING COUNSEL** ........ **20**

**VII. ANDREW PERRONG CANNOT STATE THAT THE SUBPOENA REQUIRED UNREASONABLE TIME FOR COMPLIANCE** ........ **21**

**VIII. THE REQUESTS AND INSURUCTIONS ARE NOT IMPROPER** ........ **22**

**IX. THE COURT SHOULD ACKNOWLEDGE SERVICE ON ANDREW PERRONG AS THE PROCESS SERVER HAS MADE MULTIPLE ATTEMPTS TO SERVE ANDREW PERRONG AND PERRONG LAW. BOTH ARE AVOIDING SERVICE** ........ **23**

**CONCLUSION** ........ **26**

**CERTIFICATE OF WORD COUNT** ........ **26**

**CERTIFICATE OF SERVICE** ........ **28**

## TABLE OF AUTHORITIES

**Cases**

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1 (D.D.C. 2016), aff'd, 892 F.3d 1264 (D.C. Cir. 2018) ........ 21

*Gelazela v. Santa Ana Police Department*, No. SA CV 21-1126-HDV (DFM), 2024 WL 1136338 (C.D. Cal. 2024) ........ 16

*In re Perrong Law*, Case No. 2:26-mc-88 (E.D. Pa. 2026) ........ passim

*Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, No. 89-566(B), 130 F.R.D. 348 (D.N.J. 1990) ........ 15, 16

*Musko v. McCandless*, No. CIV.A. 94-3938, 1995 WL 580275 (E.D. Pa. Sept. 29, 1995) ........ 15

*Owen v. Audubon Field Solutions, LLC*, No. 25-mc-00070, 2026 WL 459255 (E.D. Penn., Feb. 18, 2026) ........ 21

*P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452 (7th Cir. 2017) ........ 10

*Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173 (N.D. N.Y. Sept. 23, 2013) ........ 10

*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ........ 20

*UHS of Delaware, Inc. v. United States Dep't of Lab., Occupational Safety & Health Admin.*, No. MC 19-168, 2020 WL 13850731 (E.D. Pa. Jan. 21, 2020) ........ 9

*United State ex rel. Kimble v. Pennsylvania Care Assocs., LLC*, No. CV 20-1694, 2025 WL 4351495 (E.D. Pa. Feb. 25, 2025) ........ 26

*Wilson v. Freeway*, Case 6:25-cv-01869-MC (Or. Dist. 2025) ........ 11

*Wolanyk v. Does 1-15*, No. 3:26-CV-00127-AN, 2026 WL 2875915 (D. Or. May 18, 2026) ........ 23

*Wrench LLC v. Taco Bell Corp.*, No. 1:98-CV-45, 212 F.R.D. 514 (W.D. Mich. 2002) ........ 21

## A. SUMMARY OF ARGUMENT

First, this matter should be transferred to Oregon District Court as the parties have already submitted a joint statement to the Court as to production of the video that was taken by ANDREW PERRONG on October 20, 2025, and the Court has requested formal motions to be submitted for consideration.

Second, ANDREW PERRONG states that the discovery is irrelevant to the claims in the lawsuit, however, it was ANDREW PERRONG and LEON WEINGRAD who made statements and/or arguments in the pleadings alleging that DABELLA EXTERIORS, LLC showed up at his property and was trespassed from his residence by the police. Moreover, a letter delivered from LEON WEINGRAD's counsel to undersigned counsel made allegations that DABELLA EXTERIORS LLC threatened violence, requested depositions of the DABELLA EXTERIORS, LLC individuals and preservation of materials related to the incident. ANDREW PERRONG cannot use the information he has in his possession as a sword and shield. ANDREW PERRONG has made the October 20, 2025 incident a relevant part of the pleadings to paint a twisted picture of the events of October 20, 2025. DABELLA EXTERIORS LLC is entitled to full discovery, especially, the video of his direct interactions with DABELLA EXTERIORS LLC that will prove or disprove the statements made in the pleadings in the Underlying Action, and the statements ANDREW PERRONG made to the police as a factual predicate for a visit to the site where DABELLA EXTERIORS LLC was located.

Third, the fact that ANDREW PERRONG is lead counsel in the Underlying Action does not warrant his objections to relevant discovery, especially, where as here, he has already stated in a declaration that his participation was not at the direction of his firm or any client, but was instead made in his personal capacity. Further, there is no attorney-client privilege that bars production

of the requested information. Any and all information that is requested in the Subpoena relates to a ***factual*** incident that occurred in the presence of third parties, and ANDREW PERRONG intentionally placed himself right in the middle of that incident by approaching and interacting with DABELLA EXTERIORS LLC's canvassers ***after*** they left the property of LEON WEINGRAD, and by calling the police on DABELLA EXTERIORS LLC, alleging threatened violence – and then using a manufactured "police" event as a factual basis to support their position in the pleadings in the Underlying Action.

Fourth, the undersigned counsel informed ANDREW PERRONG at the time of issuance of the subpoena that she would agree to an extension for him to respond to the Subpoena and seek an extension to the discovery deadline. In addition, ANDREW PERRONG has been aware that DABELLA EXTERIORS LLC has been seeking this video for months, and it should take no longer than a couple minutes to simply copy the video and provide it to undersigned counsel.

Finally, the requests/instructions on the subpoena are not improper; rather, such requests are rather limited. Moreover, ANDREW PERRONG never conferred with undersigned counsel on this topic before submitting the motion In sum, the motion to quash should be denied.

## B. FACTUAL BACKGROUND

1. On or about October 20, 2025, DABELLA EXTERIORS, LLC's canvassers, as part of a general marketing effort, were canvassing in an area where LEON WEINGRAD's home was located. DABELLA EXTERIORS, LLC's canvassers did not know of LEON WEINGRAD or that he was currently involved in a lawsuit against DABELLA EXTERIORS, LLC. DABELLA EXTERIORS, LLC's canvassers thereafter left the home without incident. Specifically, as to this incident, LEON WEINGRAD testified that:

> ·3· · ·Q.· · Other than you asking them who they were
> ·4 and them identifying themselves as Dabella, was

anything else communicated between you and Dabella at that point?

A.· · Hmm.· They were -- they asked me if I wanted -- if I would be interested -- which is odd. They asked me if I was interested in getting any work done on my house.· And I just was like -- I couldn't believe that they were actually standing in front of me.· But that's what I remember -- something along those lines.

[**Ex. 1**, L. Weingrad Depo. Trans. 15:13]. A copy of the excerpts of the deposition testimony is attached as **Exhibit 1**.

2. When asked if DABELLA EXTERIORS, LLC's said anything harassing, LEON WEINGRAD stated "No." [L. Weingrad Depo. Trans. 15:25-16:1]. When asked if anybody from DABELLA EXTERIORS, LLC's threatened any violence, he stated "No. Not to me, no." [**Ex. 1,** L. Weingrad Depo. Trans. 16:1-3]. LEON WEINGRAD also stated that he did not witness DABELLA EXTERIORS, LLC threatening ANDREW PERRONG:

Q.· · Did you witness Dabella threatening to punch Mr. Perrong in the face?

A.· · No.

Q.· · Did you witness Dabella saying that he was going to make them square and it wasn't going to end well?

A.· · No.

[**Ex. 1,** L. Weingrad Depo. Trans. 24:14:20].

3. LEON WEINGRAD testified that DABELLA EXTERIORS, LLC then left the property after he closed the door on them:

And did Dabella leave the property?· Had they already left the property after you had -- you had closed the door on them?

A.· · Yes.

[**Ex. 1,** L. Weingrad Depo. Trans. 17:10-13].

4. LEON WEINGRAD testified that he called his attorney, and left it up to his attorney to handle:

> My attorney just happened to be in town
> working on something -- because he works on -- he
> does cases in Oregon -- and I called him right away,
> and he was nearby, so he was able to get over there
> to get to the house within minutes, so he took it
> from there.

[**Ex. 1,** L. Weingrad Depo. Trans. 15:14-19].

5. LEON WEINGRAD testified that he did not call the police, and that it was his attorney who did:

> So you didn't call the police.· Is that
> correct?
> A.· · No, I did not.
> Q.· · Do you know who did call the police?
> MR. PERRONG:· Objection to form.
> You can answer to the extent you know.
> THE WITNESS:· As far as I know my
> attorney called the police.

[**Ex. 1,** L. Weingrad Depo. Trans. 20:15-22].

6. LEON WEINGRAD testified that DABELLA EXTERIORS, LLC had already left his property at the time the police were called:

> Q.· · At the time that the police were called
> where was Dabella?· Had Dabella already left the
> property?
> MR. PERRONG:· Objection to form.
>
> THE WITNESS:· Yes, they had already
> left the property.· And when I came out there the
> police were searching for them.· They did locate
> them, but I was kind of left out of it.· It was
> between my attorney and the police, and that's kind
> of where I left it.

[**Ex. 1,** L. Weingrad Depo. Trans. 22:16-25].

7. LEON WEINGRAD had no knowledge of whether the police took any action against DABELLA EXTERIORS, LLC:

> Q.· · Did you -- did the police cite them at all, to your knowledge?· Ticket them?· Give them a warning?· Anything?
> A.· · I don't recall.

[**Ex. 1,** L. Weingrad Depo. Trans. 23:13-16].

8. LEON WEINGRAD testified that he did not inform the police that DABELLA EXTERIORS, LLC engaged in any harassing actions or threat of violence:

> Q.· · Did you inform the police that Dabella was harassing you?
> A.· · No.
> Q.· · Did you inform the police that Dabella had engaged in any type of threat or violence?
> MR. PERRONG:· Objection to form.
> THE WITNESS:· No, not that I recollect.

[**Ex. 1,** L. Weingrad Depo. Trans. 22:7-14].

9. LEON WEINGRAD also testified that although he had a Ring camera installed, that it would not have recorded the interaction because it was broken:

> Q.· · Do you have a Ring camera or any other camera on your house?
> A.· · I do.
> Q.· · What kind of camera?
> A.· · I think it's a Ring, like you mentioned.
> Q.· · Okay.
> And would your Ring have recorded the interaction with Dabella?
> A.· · Unfortunately, no.· It was broken.· It's broken.· It never worked.

[**Ex. 1,** L. Weingrad Depo. Trans. 18:3-12].

10. In his Declaration attached to his Motion, ANDREW PERRONG states under the penalty of perjury in his Declaration:

> 10. Any recording of the October 20, 2025 visit that may have been made was not made at the direction of the Firm or any client, was not made for purposes of the Firm's representation of Plaintiff or the underlying litigation, and is held by an individual, not by the Firm.

[ECF No. 1-2, ¶ 13]. However, LEON WEINGRAD testified that ANDREW PERRONG showed up to the incident as his attorney:

> 21· Q.· · Did Mr. Perrong show up as your attorney?
> 22· A.· · Yeah.· Yeah, it's a legal issue.· That's
> 23 why I stepped away and let him handle it.
> 24· Q.· · Okay.

[**Ex. 1,** L. Weingrad Depo. Trans. 24:21-24].

11. Further, ANDREW PERRONG made multiple objections based on the attorney-client privilege relating to this incident, where ANDREW PERRONG directed his client not to answer:

> 15· Q.· · Are you aware of anybody who took any
> 16 photos of Dabella?
> 17· MR. PERRONG:· Objection to form.
> 18 Objection to attorney-client privilege.
> 19·Instructing the witness not to answer.

[**Ex. 1,** L. Weingrad Depo. Trans. 18:17-19].

> 23· Q.· · Do you know who did call the police?
> 24· MR. PERRONG:· Objection to form.
> 25 Objection to attorney-client privilege.
> ·1 objection to attorney-client privilege.
> ·2· Instructing the witness not to answer.

[**Ex. 1,** L. Weingrad Depo. Trans. 19:23-20:1-2].

> 3· Q.· · Did you direct your attorney to call the
> ·4 police on Dabella?
> ·5· A.· · No.
> ·6· MR. PERRONG:· Objection to form.
> ·7· And I'm instructing the witness not to
> ·8 answer.
> ·9· THE WITNESS:· Okay.

[**Ex. 1**, L. Weingrad Depo. Trans. 21:3-9].

> Q.· · Did you -- did you tell your attorney that Dabella was harassing?
> MR. PERRONG:· Objection to form. Instructing the witness not to answer for privilege.
>
> Q.· · Did you tell your attorney that -- that Dabella had engaged in violence?
> MR. PERRONG:· Objection the form. Instructing the witness not to answer on the basis of attorney-client privilege.

[**Ex. 1,** L. Weingrad Depo. Trans. 21:11-21].

12. Subsequent to this incident, LEON WEINGRAD's attorneys sent a letter to undersigned counsel. A copy of letter is attached as **Exhibit 2**. The letter states:

> At that time, two DaBella Home Improvement employees came to Mr. Weingrad's door step, and stood there for some time, while listening to what was going on inside and looking through the window of Mr. Weingrad's house, and without knocking or announcing their presence. When Mr. Weingrad's wife came out and questioned why these individuals were on the door step, these individuals asked for Mr. Weingrad, the owner of the house.
>
> Andrew Perrong was also present and asked them why they were at the house given that DaBella is a defendant in pending litigation. The employees laughed, claimed ignorance of the lawsuit, and responded "we're working." One then stated to Mr. Perrong, "Do you want a lawsuit against you?" When Mr. Perrong asked what kind of lawsuit they were referring to, they said, "it doesn't matter." One individual further stated "it's not going to turn out right," told Mr. Perrong to "back up," stated he would make Mr. Perrong "a square," (threatening physical violence).
>
> The Milwaukee Police were notified, attended, and trespassed the two individuals from Mr. Weingrad's house. The individuals claimed that they were soliciting, but the police further ascertained that they possessed no permit to solicit.

The letter threatens sanctions, a protective order, and seeks the taking of depositions pursuant to this incident.

13. On or about October 20, 2025, at 6:45:49 p.m., ANDREW PERRONG initiated a call to the police. A copy of the transcript of the recorded call is attached as **Exhibit 3**. ANDREW PERRONG's interaction with the operator is as follows:

> MS. TICE:· 991.· What's the address of the

emergency?
MS. PERRONG:· Southeast Harvey Street and 36th

[**Ex. 3**, Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 2:3-5].

MS. TICE:· Tell me exactly what happened.
MS. PERRONG:· There are two individuals here
from the Bella Home Improvement.· I'm a lawyer.
MS. TICE:· They are from where?
MR. PERRONG:· They were coming to my client --
the Bella Home Improvements.· They came to my
client's house to harass my client.
MS. TICE:· Okay, where are they now?
MS. PERRONG:· They're walking down Harvey.
MS. TICE:· And what did they do?
MS. PERRONG:· I am -- my -- I am a lawyer for
my client.· We are currently suing the Bella.· Two
individuals showed up at my client's house at 9723
Southeast 36th to harass my client from, from the
Bella Home Improvement.
MS. TICE:· East or westbound?
MS. PERRONG:· I'm not sure.
MS. TICE:· Are they going, like, towards the
river or towards, like, towards the train tracks?
MS. PERRONG:· They're going to the -- they're
going toward the water tower.· Those two individuals
over there.
MS. TICE:· And do they have any weapons, like
guns or knives?
MS. PERRONG:· No, but they threatened -- they
threatened.
MS. TICE:· How did they threaten --
MR. PERRONG:· They threatened to -- they
threatened to hit me in the face, and they called --
they threatened to hit me in the face, and they said
that it's not going to end well if I call the cops.
MS. TICE:· Okay.· How long ago did you see them
last?
MS. PERRONG:· I know -- I, I see them exactly
right now.· They're -- they're at a -- they're at a
house.
MS. TICE:· Okay.· Can you tell what address
they're in front of?
MS. PERRONG:· No, I don't.· It's a --it's a

> ·1· ·white house with a, a VW Bug in front of it.

[**Ex. 3,** Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 2:12-4-1].

> 22· MS. PERRONG:· Yeah, yeah, they threatened to --
> 23· they threatened to punch me in the face, so I called
> 24· the cops.
> 25· MS. TICE:· Okay.· Did they ever actually touch
> 1· ·you?
> ·2· MS. PERRONG:· No, but they came, came at me
> ·3· ·aggressively

[**Ex. 3,** Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 5:22-6:3].

14. Despite multiple attempts, in the Underlying Action, on September 11, 2026, LEON WEINGRAD's counsel and co-counsel, refused to produce the video that ANDREW PERRONG took with his interaction with DABELLA EXTERIORS, LLC as part of the Plaintiff's production. Mr. Anthony Paronich stated:

> The video is not in Mr. Weingrad's possession, care, custody, or control. **If you feel the need to subpoena Perrong Law, you are free to do so,** and I am sure they will respond accordingly.

A copy of that email is attached as **Exhibit 4** (e.s.).

## C. <u>MEMORANDUM OF LAW</u>

### I. THIS COURT SHOULD TRANSFER THE MATTER TO THE OREGON DISTRICT COURT HANDLING THE UNDERLYING ACTION

A "motion to quash a subpoena will typically be brought in the district where compliance is required and a transfer to the issuing court is appropriate only in exceptional circumstances." *UHS of Delaware, Inc. v. United States Dep't of Lab., Occupational Safety & Health Admin*., No. MC 19-168, 2020 WL 13850731, at *1 (E.D. Pa. Jan. 21, 2020). Transfer under Rule 45(f) "allows for consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in

multiple fora as well as piecemeal appeals." *P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452, 458 (7th Cir. 2017). The Advisory Committee note to Rule 45(f) explains:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Here, this Court did not issue the subpoena, and ANDREW PERRONG's arguments that the documents are irrelevant and targets opposing counsel of record, weigh in favor of transfer. ANDREW PERRONG's arguments "emphasize[] the need for the court where the underlying matter lies to decide the matter," because "the court with the most familiarity with the case is better positioned to determine whether the documents are indeed relevant" and could "better balance whatever relevance exists against the need to protect" non-parties. *Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176 (N.D. N.Y. Sept. 23, 2013).

In this case, the undersigned parties already have discovery disputes concerning the very evidence requested in the subpoena that have been presented by joint letter to the Oregon District Court. On October 29, 2026, the Court requested the parties to submit discovery motions on the discovery dispute. A copy of the email is attached as **Exhibit "5."** Further, ANDREW PERRONG and his client have already made representations in the pleadings in the Underlying Action in Oregon District Court, and the Oregon District Court is well-acquainted with the facts of this case and is in a superior position to resolve the motion to quash. ANDREW PERRONG also cites a motion to quash he filed in the Underlying Action, and the Oregon District Court has more knowledge of the scope of that subpoena and reason for a ***partial*** denial. [Mot. at 3]. Indeed, the

Oregon District Court is more appropriate to determine any relevancy disputes, representations previously made to the Court in the pleadings, appropriateness of discovery given the direct interaction of counsel with another represented party, attorney-client privilege issues, proper subpoenaed party, as well as the appropriateness of alternative service.

Moreover, the Oregon District Court is in the position of appointment of class counsel and certifying a class, and thus, ordering discovery from such counsel would be better suited for the Oregon District Court. This is especially true, where as here, one Oregon District Court recently consolidated and denied class certification in 14 cases filed by ANDREW PERRONG, and ordered preservation of materials. *Wilson v. Freeway*, Case 6:25-cv-01869-MC (Or. Dist. 2025) [ECR No. 19, pp. 28-31], [ECF No. 30 (Judge McShane to oversee all 14 cases filed by Wilson)]; [ECF 47 (Granting Motion to Deny Class Certification for all cases filed by Wilson, denying Plaintiff's Motion for Voluntary Dismissal and ordering preservation of materials)].

Finally, although ANDREW PERRONG also states that he "does not regularly transact business in person in Oregon or Florida," he has filed 51 cases in Oregon since late 2024, and was very coincidentally present at or near LEON WEINGRAD's residence in Oregon on October 20, 2025. Notably, ANDREW PERRONG was also recently present and appeared in the same room with LEON WEINGRAD via Zoom in the Underlying Action at his last deposition on October 5, 2026. And most pertinently, the video in question of the interactions that ANDREW PERRONG engaged in with DABELLA EXTERIORS, LLC, was taken in Oregon.

Therefore, the interests favoring transfer outweigh ANDREW PERRONG's interest in obtaining a local resolution of the motion to quash, especially, where as here, he is attempting to quash a subpoena served by email and has made an appearance as counsel in the Underlying Action

in Oregon District Court, and has avoided service of both the subpoena directed to PERRONG LAW and to ANDREW PERRONG.

## II. ANDREW PERRONG HAS AN ETHICAL OBLIGATION TO RELEASE THE VIDEO OF THE DIRECT INTERACTION WITH DABELLA EXTERIORS LLC CANVASSERS ON OCTOBER 20, 2025

The video that DABELLA EXTERIORS LLC seeks is not a work product or an attorney client privileged video. Rather, the video in possession of ANDREW PERRONG and/or PERRONG LAW, LLC contains a ***direct interaction*** with DABELLA EXTERIORS, LLC's canvassers, who ANDREW PERRONG, as counsel for LEON WEINGRAD in the Underlying Action, approached when DABELLA EXTERIORS, LLC's counsel was not present. The entire interaction by and between ANDREW PERRONG and DABELLA EXTERIORS LLC was an intentional action by ANDREW PERRONG. DABELLA EXTERIORS LLC had already peacefully left the property of LEON WEINGRAD. [**Ex. 1,** L. Weingrad Depo. Trans. 22:16-25]. Despite this, ANDREW PERRONG, holding a phone in one hand and videotaping the incident, approached DABELLA EXTERIORS, LLC's canvassers while they were offsite, and engaged in a heated interaction with them. [**Ex. 3,** Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 5:22-6:3]. ANDREW PERRONG also called the police on DABELLA EXTERIORS LLC indicating that DABELLA EXTERIORS LLC was harassing his client and that DABELLA EXTERIORS LLC threatened violence. *Id*. at 2:12-4:1, 5:22-6:3. DABELLA EXTERIORS LLC disputes the factual predicate that ANDREW PERRONG relayed to the police; DABELLA EXTERIORS LLC anticipates that the video interaction will indicate precisely whether or not ANDREW PERRONG's statements to the police were accurate, the extent to which ANDREW PERRONG communicated with DABELLA EXTERIORS LLC's canvassers regarding the Underlying Action, and whether ANDREW PERRONG's behavior was

intentional to ***create*** evidence involving a police event against DABELLA EXTERIORS LLC in the Underlying Action. Regardless of whether or not a subpoena was issued, as a matter of an ethical and professional duty, the undersigned is entitled to the video interaction between ANDREW PERRONG and her clients since they were approached without counsel present.

## III. THE VIDEO IS RELEVANT TO REPRESENTATIONS MADE BY PLAINTIFF IN THE UNDERLYING ACTION

LEON WEINGRAD has made representations in the Underlying Action that DABELLA EXTERIORS, LLC was trespassed from his property on September 11, 2026, as follows:

> 22. Shockingly, on or about October 20, 2025, DaBella sent two goons to come to my house, which resulted in the police being called and DaBella being trespassed from my residence.

[ECF No. 54, *Weingrad v DaBella Exteriors, LLC*, Or. D. Ct. Case No. 3:25-cv-00396-SI]. LEON WEINGRAD used this statement to support of his position in opposition to the DABELLA EXTERIORS LLC's motion to deny class certification [ECF No. 51, p. 26, 28], and in support of his motion to quash the subpoena issued to WEINGRAD's employer [ECF No. 72, p. 4, 10].

DABELLA EXTERIORS LLC disputes the representations and characterization presented to the Court that DABELLA EXTERIORS LLC was "trespassed from [his] residence" by the "police." DABELLA EXTERIORS LLC's canvassers were not aware of LEON WEINGRAD or his lawsuit, and apparently approached his front door because LEON WEINGRAD's residence was in an area where DABELLA EXTERIORS LLC was canvassing at the time. Indeed, after deposing LEON WEINGRAD, it is clear that DABELLA EXTERIORS, LLC did ***not*** engage in any harassing conduct or relay any threat of violence on LEON WEINGRAD. [**Ex. 1**, L. Weingrad Depo. Trans. 15:25-16:3]. It is also clear that DABELLA EXTERIORS LLC was already off property when the police were called. [**Ex. 1**, L. Weingrad Depo. Trans. 17:10-13]. Therefore,

DABELLA EXTERIORS LLC could not have been trespassed from LEON WEINGRAD's residence, as represented by LEON WEINGRAD to the Court in the Underlying Action.

It is DABELLA EXTERIORS, LLC's further position that DABELLA EXTERIORS, LLC never engaged in any harassing conduct or threatened violence that was the factual predicate that ANDREW PERRONG stated to police, and that ultimately resulted in the police arriving at the scene. The direct video evidence as to whether or not DABELLA EXTERIORS LLC engaged in any threatening conduct that would have warranted ANDREW PERRONG to call the police is within the possession of ANDREW PERRONG. If DABELLA EXTERIORS LLC indeed engaged in harassment, threatened violence and is a bad actor in the events that occurred on October 20, 2025, and ANDREW PERRONG has a video of that interaction, then why would ANDREW PERRONG not willingly and voluntarily release the video that shows the interaction?

Finally, in addition to raising these issues in the pleadings, any position that the discovery is not relevant was entirely waived by LEON WEINGRAD's counsel as they specifically sent a letter to the undersigned (1) threatening sanctions, (2) demanding depositions and, (3) demanding preservation of evidence. [**Ex. 2**]. In addition, on a meet and confer with ANDREW PERRONG on October 29, 2026, he argued that DABELLA EXTERIORS LLC was obligated to supplement its discovery responses with the police report and 911 call. [**Ex. 7**, Zelmer Decl. ¶ 6]. Although the undersigned did not agree that documentation received from a third party in response to a public record request would require the client to supplement its discovery responses, the undersigned voluntarily served both the audio call and police report the very next day. [**Ex. 7**, Zelmer Decl. ¶ 6]. ANDREW PERRONG cannot reasonably ***demand*** discovery, including depositions from DABELLA EXTERIORS LLC, on this very topic and now claim that the information is irrelevant. The Perrong video is the key evidence that will resolve whether

counsel's statements in the letter as to threatened violence and counsel's basis for demanding discovery form DABELLA EXTERIORS LLC and threatening sanctions were accurate or not; it will also resolve to what extent the lawsuit was discussed. [**Ex. 2**, Letter from Anthony Paronich (Andrew Perrong was also present and asked them why they were at the house given that DaBella is a defendant in pending litigation.)]. LEON WEINGRAD and his counsel do not have the ***unilateral*** right to determine whether or not the discovery related to this incident is relevant.

In sum, ANDREW PERRONG cannot have his cake and eat it too. It was ANDREW PERRONG who decided to approach and interact directly with the DABELLA EXTERIORS LLC canvassers, and then called the police stating that they threatened violence. It was also ANDREW PERRONG and his co-counsel who decided to threaten sanctions and demand depositions based on this interaction, and accused DABELLA EXTERIORS LLC of threatened violence. But it did not stop there – this incident has been used to present to the Court that DABELLA EXTERIORS, LLC is a bad actor, and to demonstrate to the Court that DABELLA EXTERIORS LLC had to be removed from LEON WEINGRAD's property by the police. [ECF No. 54, *Weingrad v DaBella Exteriors, LLC*, Or. D. Ct. Case No. 3:25-cv-00396-SI]. ANDREW PERRONG cannot logically oppose the Subpoena based on relevance.

## IV. ANDREW PERRONG WAS AN ACTIVE PARTICIPANT IN THE EVENTS, AND IS THE ONLY PARTY WHO TOOK A VIDEO OF THE INTERACTION.

Discovery is appropriate where the "attorney is a fact witness." *Musko v. McCandless*, No. CIV.A. 94-3938, 1995 WL 580275, at *1 (E.D. Pa. Sept. 29, 1995) (citations omitted). "The importance and degree of uniqueness of his information outweighs the potential negative impact upon the attorney-client relationship and the adversary process." *Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, No. 89-566(B), 130 F.R.D. 348, 354 (D.N.J. 1990).

Here, undisputedly, ANTHONY PERRONG is the ***only*** party who took the video of the interaction with DABELLA EXTERIORS LLC. There is no other party who has the video, which is the most direct evidence. LEON WEINGRAD testified that he did not witness any interaction that ANDREW PERRONG had with DABELLA EXTERIORS LLC. [**Ex. 1,** L. Weingrad Depo. Trans. 17:15-17]. He also testified that although he had a Ring camera, it was broken. *Id.* at 18:3-12. LEON WEINGRAD did not observe any threatened violence or harassment, nor did he recall any events with the police. *Id.* at 15:25-1, 17:1:3. ANDREW PERRONG refers to a body camera footage from the police; however, the undersigned had requested this footage from the police department; the police records manager with the Milwaukie Police Department responded "[u]nder Oregon Public Records Law, BWC footage is not releasable for the purposes of civil litigation as it would be a private – not public – interest. As such, the BWC footage remains denied under ORS 192.345(40)(b)." [**Ex. 7**, Zelmer Decl. ¶ 7]. Also, since the interaction with DABELLA EXTERIORS LLC occurred ***prior to*** the police arriving at the scene, it would not contain the evidence that DABELLA EXTERIORS LLC is seeking from ANDREW PERRONG. Although DABELLA EXTERIORS LLC canvassers can testify, "the best evidence of indifference would be the video footage." *Gelazela v. Santa Ana Police Department*, No. SA CV 21-1126-HDV (DFM), 2024 WL 1136338 (C.D. Cal. 2024). Indeed, there is "no substitute for direct video evidence" and ANDREW PERRONG is the only party in possession of that video. *Id.*

Further, the evidence is highly disputed between the parties, and there are multiple inconsistent statements made by LEON WEINGRAD and his counsel. *See, infra*, Part V. *See e.g., Johnston,* 130 F.R.D. at 354 (permitting attorney deposition when contents of meetings were highly disputed.) The video is, thus, crucial to resolution of these disputed issues. Accordingly, this

Court should permit the limited discovery requested in the Subpoena directed to ANDREW PERRONG.

## V. THE INCONSISTENT STATEMENTS AND TESTIMONY PROVIDE A FACTUAL BASIS FOR DISCOVERY REQUESTED IN THE SUBPOENA

Finally, LEON WEINGRAD's testimony is inconsistent with the representations made in the Underlying Action as well as by their counsel. For example, LEON WEINGRAD testified that he was the only person present when DABELLA EXTERIORS LLC's canvassers approached his house. ANTHONY PARONICH, co-counsel for LEON WEINGRAD, on the other hand, stated that LEON WEINGRAD's wife was present and opened the door:

| ***Testimony from Leon Weingrad that his Wife was Not Present*** | ***Letter from Leon Weingrad's Counsel Identifying Wife as Present and Interacting with DaBella*** |
|---|---|
| Was anybody else at the house when Dabella showed up on October 20th?<br><br>A.· · That was just me -- yeah, it was just me at that point.· My wife and child were not at the residence at that time.<br><br>[**Ex. 1**, 14:23-15:2] | When Mr. Weingrad's wife came out and questioned why these individuals were on the door step, these individuals asked for Mr. Weingrad, the owner of the house.<br><br>[**Ex. 2, Letter from Anthony Paronich**] |

In addition, ANTHONY PARONICH made representations in the letter delivered to the undersigned that ANDREW PERRONG was ***present*** at the time of the interaction, but LEON WEINGRAD said that he called ANDREW PERRONG, and he showed up minutes later, as follows:

| ***Testimony from Leon Weingrad that he Called Andrew Perrong Who Showed Up in Oregon at his house "within minutes"*** | ***Letter from Leon Weingrad's Counsel Identifying Andrew Perrong as "present" at the house*** |
|---|---|
| My attorney just happened to be in town working on something -- because he works on – he does cases in Oregon -- and I called him | Andrew Perrong was also present and asked them why they were at the house |

| | |
|---|---|
| right away, and he was nearby, so he was able to get over there to get to the house within minutes, so he took it from there.<br><br>[**Ex. 1,** L. Weingrad Depo. Trans. 15:14-19]. | given that DaBella is a defendant in pending litigation.<br><br>[**Ex. 2**, Letter from Anthony Paronich] |

Further, ANTHONY PARONICH and LEON WEINGRAD made statements that DABELLA EXTERIORS LLC was trespassed from LEON WEINGRAD's residence/house; however, the testimony of LEON WEINGRAD and ANDREW PERRONG's call to police clearly indicates that DABELLA EXTERIORS LLC was already off site and no longer at LEON WEINGRAD's property when the police were called, as follows:

| ***Testimony from Leon Weingrad that DaBella Had Already Left the Property At the Time the Police were Called and 911 Call from Andrew Perrong Identifying DaBella's Location Down the Street and Off Property*** | ***Letter from Leon Weingrad's Counsel and Declaration from Leon Weingrad Stating that the police trespassed two individuals from Mr. Weingard's house/residence.*** |
|---|---|
| At the time that the police were called where was Dabella?· Had Dabella already left the property?<br>MR. PERRONG:· Objection to form.<br>THE WITNESS:· Yes, they had already left the property.· And when I came out there the police were searching for them.· They did locate them, but I was kind of left out of it.· It was between my attorney and the police, and that's kind of where I left it.<br><br>[**Ex. 1,** L. Weingrad Depo. Trans. 22:16-25].<br><br>MS. TICE:· 991.· What's the address of the emergency?<br>MS. PERRONG:· Southeast Harvey Street and 36th<br>. . .<br>MS. TICE:· Okay, where are they now? | The Milwaukee Police were notified, attended, and trespassed the two individuals from Mr. Weingrad's house.<br><br>[**Ex. 2**, Letter from Anthony Paronich]<br><br>22. Shockingly, on or about October 20, 2025, DaBella sent two goons to come to my house, which resulted in the police being called and DaBella being trespassed from my residence.<br><br>[**ECF No. 54**, *Weingrad v DaBella Exteriors, LLC*, Or. D. Ct. Case No. 3:25-cv-00396-SI]. |

| | |
|---|---|
| MS. PERRONG:· They're walking down Harvey<br><br>[**Ex. 3**, Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 2:3-5, 19:20]. | |

Further, the interaction described by ANTHONY PARONICH stated that the DABELLA EXTERIORS LLC's canvassers threatened violence by stating he was going to "make Mr. Perrong 'a square'" while the statements of ANDREW PERRONG on its call to the police are drastically different, indicating that the canvassers from DABELLA EXTERIORS LLC "threatened to punch [him] in the face."

| ***Call from Andrew Perrong to Police Describing Alleged Violence*** | ***Letter from Leon Weingrad's Counsel Describing Alleged Violence*** |
|---|---|
| MR. PERRONG:· They threatened to – they threatened to hit me in the face, and they called -- they threatened to hit me in the face, and they said that it's not going to end well if I call the cops.<br>. . . .<br>MS. PERRONG:· Yeah, yeah, they threatened to -- they threatened to punch me in the face, so I called the cops.<br>MS. TICE:· Okay.· Did they ever actually touch you?<br>MS. PERRONG:· No, but they came, came at me aggressively<br><br>[**Ex. 3**, Transcript of Audio 911 call from October 20, 2025, Call from Andrew Perrong to Police, 3-14-17, 5:22-6:3]. | One individual further stated "it's not going to turn out right," told Mr. Perrong to "back up," stated he would make Mr. Perrong "a square," (threatening physical violence).<br><br>[**Ex. 2**, Letter from Anthony Paronich] |

It is DABELLA EXTERIORS, LLC position that there was in fact no threat of violence. DABELLA EXTERIORS, LLC is entitled to discovery of the video that will demonstrate the

activities that actually occurred between ANDREW PERRONG and DABELLA EXTERIORS, LLC that resulted in the call that ANDREW PERRONG placed to the police.

## VI. ANDREW PERRONG IS NOT ENTITLED TO PREVENT DISCOVERY ON THE BASIS THAT THE SUBPOENA IS DIRECTED TO OPPOSING COUNSEL

First and foremost, in an effort to quash the subpoena directed to PERRONG LAW, ANDREW PERRONG stated under the penalty of perjury in his Declaration:

> 10. Any recording of the October 20, 2025 visit that may have been made was not made at the direction of the Firm or any client, was not made for purposes of the Firm's representation of Plaintiff or the underlying litigation, and is held by an individual, not by the Firm.

[*In re Perrong Law*, Case No. 2:26-mc-88 (E.D. Pa. 2026), ECF No. 1-2, ¶ 13]. Accordingly, rather than dispute who the subpoena should be issued to, PERRONG LAW or ANDREW PERRONG, DABELLA EXTERIORS, LLC issued a subsequent subpoena directly to ANDREW PERRONG who admittedly has possession of the video. Now ANDREW PERRONG states that the subpoena is improper as directed to opposing counsel, arguing the *Shelton* test applies. *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). However, his statements made in the motion to quash in the Perrong Law related matter, indicate that he did ***not*** make the video "at the direction of the Firm or any client" and that the recording was "not made for the purposes of the Firm's representation of Plaintiff or the underlying litigation." [*In re Perrong Law*, Case No. 2:26-mc-88, ECF No. 1-2, ¶ 13]. While the evidence proves otherwise, it is troubling to understand the crux of ANDREW PERRONG's argument that this subpoena is objectionable because it is directed to opposing counsel and that he is entitled to protection under the *Shelton* test when he admittedly made this video in his personal capacity, not as counsel of record.

Moreover, in *Shelton*, the issue on appeal was whether the "existence of corporate documents is protected by the work-product doctrine or the attorney-client privilege." *Shelton*, 805 F.2d at 1326. *See also, Owen v. Audubon Field Solutions, LLC*, No. 25-mc-00070, 2026 WL 459255 (E.D. Penn., Feb. 18, 2026) (quashing attorney subpoena because subpoena requested privileged information). No issues of privilege exist in this matter. Here, the subpoena seeks non-privileged information of an interaction that ANDREW PERRONG had with an opposing party, DABELLA EXTERIORS, LLC. There is no attorney-client privilege that applies to prevent disclosure of the facts that occurred on October 20, 2025. *Wrench LLC v. Taco Bell Corp.*, No. 1:98-CV-45, 212 F.R.D. 514, 517 (W.D. Mich. 2002) (while confidential communications between attorney and client are protected, the privilege does not extend to facts included in such communications); *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016), aff'd, 892 F.3d 1264 (D.C. Cir. 2018) (However, "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged.").

## VII. ANDREW PERRONG CANNOT STATE THAT THE SUBPOENA REQUIRED UNREASONABLE TIME FOR COMPLIANCE

ANDREW PERRONG has been aware that DABELLA EXTERIORS LLC has been seeking production of the video for months. He responded to the second set of discovery on June 29, 2026 which requested the production of the video from his client. Moreover, he was served a copy of the PERRONG LAW subpoena which requested this video on September 17, 2026. It literally takes a couple minutes to copy the video and produce it. Indeed, it only took one day for DABELLA EXTERIORS LLC's counsel to produce the 911 call and police report that ANDREW PERRONG requested. [**Ex. 7**, Zelmer Decl. ¶ 6]. Moreover, the undersigned informed ANDREW PERRONG that she would agree to an extension to the Subpoena if he needed it, and would also seek an extension to the discovery deadline. [**Ex. 7**, Zelmer Decl. ¶ 3]. Indeed, the undersigned

filed a motion to extend the discovery deadline (over Andrew Perrong's objection). [Underlying Action, ECF 89]. The Court denied the motion without prejudice, ruling that "[a]fter this Court has ruled on the pending motions (ECF [31], [32], [33], [42], and [80]) and/or after the U.S. District Court in the Eastern District of Pennsylvania has ruled on the pending motion to quash, either party may, after a full and thorough conferral with opposing counsel, move to reopen discovery in whole or in part." [Underlying Action, ECF 90]. Therefore, ANDREW PERRONG's arguments that the Subpoena called for compliance within an unreasonable time is meritless, and in any event, the undersigned would agree to a reasonable extension.

## VIII. THE REQUESTS AND INSURUCTIONS ARE NOT IMPROPER

ANDREW PERRONG did not request any conferral on this specific topic, and of course, the undersigned counsel would be willing to confer on the scope of any requests or instructions. [**Ex. 7**, Zelmer Decl. ¶ 5]. Further, as to Request No. 4, it is LEON WEINGRAD's counsel who made the allegations of violence and/or threatened violence against DABELLA EXTERIORS, LLC, and thus, the request simply requests the factual evidence to support those claims. ANDREW PERRONG states that he was not representing his client during the October 20, 2025 incident when recording the interaction with DABELLA EXTERIORS, LLC and now inconsistently states that compiling materials in response to Request No. 4 would require him to reveal mental impressions and work product. ANDREW PERRONG's statements cannot be reconciled.

Moreover, the topics of the subpoena are extremely limited, and thus, any direction to search electronic sources are limited. However, once again, ANDREW PERRONG states that a search of his telephones, email accounts, text message accounts and computer servers would sweep files of active litigation against DABELLA EXTERIORS LLC. However, the subpoena is directed

to ANDREW PERRONG individually, and does not request privileged documents to be disclosed. Even if his search turned up privileged communications, he can withhold those communications as privileged and place them on a privilege log.[1] Finally, ANDREW PERRONG has not explained his concern about production of metadata, especially with such a limited subpoena, and Federal Courts allow production of same. *See, Wolanyk v. Does 1-15*, No. 3:26-CV-00127-AN, 2026 WL 2875915, at *2 (D. Or. May 18, 2026).

## IX. THE COURT SHOULD ACKNOWLEDGE SERVICE ON ANDREW PERRONG AS THE PROCESS SERVER HAS MADE MULTIPLE ATTEMPTS TO SERVE ANDREW PERRONG AND PERRONG LAW. BOTH ARE AVOIDING SERVICE

Undersigned counsel requested ANDREW PERRONG to accept the subpoena via email, but he declined. [**Ex. 7**, Zelmer Decl. ¶ 3]. Following his declination to accept service, multiple attempts were made to serve ANDREW PERRONG in Pennsylvania. Indeed, the following attempts were made at his residence:

> Unsuccessful attempt: Oct 27, 2026, 7:31 pm at 1488 HEATHER RIDGE DRIVE, NEWTOWN, PA 18940- No answer, not a lot of furniture in the house, house dark except one light on upstairs, no vehicles present.
>
> Unsuccessful attempt: Oct 28, 2026, 12:24 pm EDT at 1488 HEATHER RIDGE DRIVE, NEWTOWN, PA 18940. No answer, no changes.
>
> Note: Also called his business phone number twice and left messages but no returned contact
>
> Service was attempted on the 28th day of October, 2026 at that address at 2:43 PM. Server rang the doorbell camera at that property without answer. Unable to make contact at the residential address. Server drove by residential address at 3:13 PM but did not see any cars in the driveway or lights on in the house.

---

[1] ANDREW PERRONG's position on this seems inconsistent as he has stated that PERRONG LAW has no documents. As this Court stated, if that is indeed the case, "Perrong Law could resolve this dispute by simply accepting email service for this particular subpoena and responding that it does not possess any responsive materials." [*In re Perrong Law*, Case No. 2:26-mc-88, ECF No. 16, p. 3].

A copy of all the service attempts are attached as **Exhibit 6.** ANDREW PERRONG states in his Declaration in the related action [*In re Perrong Law*, Case No. 2:26-mc-88 (E.D. Pa. 2026), ECF No. 1-2, ¶ 3] that his only office is located at "1669 Edgewood Rd., Suite 218, Yardley, Bucks County, Pennsylvania 19067." Yet attempts at that location have been entirely unsuccessful as that office has been closed during normal business hours.

> Unsuccessful Attempt: Oct 28, 2026, 11:28 am EDT at 1669 Edgewood Road, Yardley, PA 19067 address is a one man office, office dark, no answer when knocking on door
>
> Note: Also called phone number for business twice and left messages but no returned contact
>
> Service was attempted on the 28th day of October, 2026 at 3:04 PM at subject's business address at 1669 Edgewood Road, Suite 218, Yardley, PA 19067. Server spoke to an employee of the landlord named Dawn who confirmed subject's office location but indicated he was not present that day. Server knocked on the door to Suite 218, which had a frosted glass panel allowing server to see lights were off. The business appeared closed and server was unable to make contact.

In addition to the attempts made to serve PERRONG LAW, it is apparent that ANDREW PERRONG has been avoiding service.[2] ANDREW PERRONG acknowledged that he "was

---

[2] Specifically, on September 22, 2026, the server attempted service at 1669 Edgewood Rd, Suite 218, Yardley PA 19067. The server's comments states as follows:

> COMMENTS: subject rents a room for office space at address provided, door locked. Server Confirmed with leasing office employee, w/f/55/5'6/160/Blue office is not manned and subject does not hold regular business hours. Server called phone #215-225-5529 and left a message for Attorney Andrew Perrong to arrange for service. Mr. Perrong returned server's call and asked server if she was a process server. When server confirmed that she was, Mr. Perrong hung up on server. Uncooperative.

There were also multiple attempts to serve PERRONG LAW LLC at his principal address that is on record with the State of Pennsylvania. Specifically, on September 28, 29, 30, 2026, the process server attempted service at 2657 Mt. Carmel Ave, Glenside, PA 19038. The server's comments states as follows:

1.) 9/28/26, 8:04:00 PM Address provided appears to be a commercial property. No answer at door. Sign for ECAM on property. Appears to be an auto business.

informed that a process server acting for DaBella came to the Firm's Yardley office while I was away." [*In re Perrong Law*, Case No. 2:26-mc-88 (E.D. Pa. 2026), ECF No. 1-2, ¶ 8].In a meet and confer with ANDREW PERRONG on October 29, 2026, ANDREW PERRONG indicated he had not been served; the undersigned stated that if he would tell us where he was going to be, then we could serve him. [**Ex. 7**, Zelmer Decl. ¶ 4]. ANDREW PERRONG's response was that he has his "rights." [**Ex. 7**, Zelmer Decl. ¶ 4].

ANDREW PERRONG's position is that he should be able to utilize the specific events of October 20, 2025 in the Underlying Action to present argument to the Court to paint DABELLA EXTERIORS LLC as the bad and harassing actor, intentionally interact directly with DABELLA EXTERIORS LLC while their counsel is not present, and call police alleging threatened violence -- and yet avoid all service attempts of a subpoena on him to allow full and complete discovery,

---

2.) 9/29/26, 9:24:00 AM Business closed.
3.) 9/30/26, 4:28:00 PM Business closed. Called number 215-885-3510 and no answer. Voicemail is not set up like a business line or phone number.

**COMMENTS:** Business closed. Called number 215-885-3510 and no answer. Voicemail is not set up like a business line or phone number. Unable to make contact at address provided.

Finally, attempts were made to locate ANDREW PERRONG at his residence, but were unsuccessful. On September 28, 29, 30, 2026, the server attempted service at 1488 Heather Ridge Drive, Newtown, PA 18940. The server's comments states as follows:

**COMMENTS:** No answer at property door, no movement. Bucks county property records lists Andrew Perrong as the current property owner. Unable to make contact at address provided.

SERVICE WAS ATTEMPTED ON THE FOLLOWING DATES AND TIMES:

1.) 9/26/26, 7:10:00 PM No answer at property door, no movement. No lights.
2.) 9/29/26, 8:16:00 AM No answer at property door, no movement.
3.) 9/30/26, 5:36:00 PM No answer at property door, no movement. Bucks county property records lists Andrew Perrong as the current property owner.

defies all logic. ANDREW PERRONG is withholding direct and relevant evidence of the events of October 20, 2025 that he raised in the first place in the Underlying Action, and that his co-counsel used to threaten sanctions. He is further using his position as lead counsel as a sword and shield by preventing discovery of the facts relating to this incident.

ANDREW PERRONG is well aware of the subpoena as he filed a motion to quash. DABELLA EXTERIORS LLC requests the Court consider the filing of his motion to quash as an acknowledgement of service, or otherwise permit email service on counsel of record who has avoided service attempts, and already made an appearance and acknowledged receipt of the subpoena at issue. *United State ex rel. Kimble v. Pennsylvania Care Assocs., LLC*, No. CV 20-1694, 2025 WL 4351495, at *2 (E.D. Pa. Feb. 25, 2025) (alternative service appropriate where that has been (1) a good faith effort to locate the defendant; (2) practical efforts to serve the defendant under these circumstances; and (3) a method of alternative service that is reasonably calculated to provide the defendant with notice). Alterative service is especially warranted given that ANDREW PERRONG continues to appear and represent in the Underlying Action at the same time as avoiding service of a subpoena issued to him personally.

## CONCLUSION

**WHEREFORE**, Defendant, DaBella Exteriors, LLC respectfully requests that this Court deny ANDREW PERRONG's Motion to Quash, as well as grant any other relief that the Court deems just and proper.

## CERTIFICATE OF WORD COUNT

Defendant, DaBella Exteriors, LLC certifies that this document contains 8,068 words, excluding the cover page, table of contents, table of authorities, certificate of service, certificate of word count and signature lines.

Dated: November 13, 2026

Respectfully Submitted,

/s/ Carmen A. De Gisi, Esq.
Carmen A. De Gisi, Esq.
PA Bar No: 208989
DE GISI LAW GROUP, LLC
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
Phone: 610-897-8721
Facsimile: 610-897-8862
E-mail: cd@degisilaw.com
*Counsel for DABELLA EXTERIORS, LLC*

Diane J. Zelmer, Esq. (*pro hac vice pending)*
Florida Bar No. 27251
BERENSON LLP
1242 SW Pine Island Rd., Suite 42-414
Cape Coral, Fl 33991
Tel: (561) 429-4496
Fax: (703) 991-2195
Email: djz@berensonllp.com
Secondary Email: hcc@berensonllp.com
*Counsel for DaBella Exteriors LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Carmen A. De Gisi
Carmen A. De Gisi, Esq.
DE GISI LAW GROUP, LLC

**SERVICE LIST**

Andrew Roman Perrong, Esq.
ANDREW PERRONG
1669 Edgewood Rd, Suite 218
Yardley, PA 19067
T: (215) 225-5529
a@perronglaw.com
*Pro se*