**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| *In re* SUBPOENA TO ANDREW PERRONG | Misc. No. 2:26-mc-99<br>(Related to Misc. No. 2:26-mc-88 (JFM)) |
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DABELLA EXTERIORS LLC,<br><br>Defendant. | Underlying action:<br><br>United States District Court for the District of Oregon, Portland Division<br><br>Case No. 3:25-cv-00396-SI |

**NON-PARTY ANDREW ROMAN PERRONG'S REPLY IN SUPPORT OF HIS MOTION TO QUASH SUBPOENA AND TO STAY COMPLIANCE**

DaBella's opposition runs 26 pages and never identifies a claim or defense in the action to which the video it seeks is relevant. The words "TCPA" and "consent" do not appear in its brief.[1] The brief instead confirms what the Subpoena is for. DaBella wants the video to learn "whether or not ANDREW PERRONG's statements to the police were accurate," (emphasis original) what he said to DaBella's employees about the lawsuit, and "whether ANDREW PERRONG's behavior was intentional to ***create*** evidence." ECF 5 at 15-16. Each is an inquiry into an individual who happens to be opposing counsel. None is a claim or defense. A subpoena that seeks nothing bearing on the case directed to the lawyer prosecuting it is not a discovery device.

[1] Citations follow the opening memorandum, ECF 1-1 at 2 n.1. "ECF" citations without a prefix refer to this docket. Citations to the underlying case's ECF uses *Weingrad* ECF. Citations to the previous miscellaneous action uses MC-88 ECF. Pin cites use ECF header page numbers.

The opposition also undercuts the theory DaBella called more important at the parties' meet and confer conference. DaBella now concedes that the encounter it wants to see "occurred prior to the police arriving at the scene." *Id.* at 19. A video of that encounter cannot show whether the police later "trespassed" DaBella's employees or the contents of the police's warning, which was recorded on the police body cameras. The records that do show it, the police report and the 911 audio, are already in DaBella's hands, and they do. ECF 5-7 ¶ 6. The Court should decide the Motion and quash the Subpoena.

## I. DABELLA HAS NOT SHOWN EXCEPTIONAL CIRCUMSTANCES FOR TRANSFER

DaBella bears the burden under Rule 45(f), and "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. DaBella does not dispute that Mr. Perrong lives in this District, that he does not consent, or that DaBella itself chose Lafayette Hill as the place of compliance. Its four arguments for transfer fail.

*First*, DaBella says the parties submitted a joint letter to the Oregon court, which "requested the parties to submit discovery motions." ECF 5 at 13. A discovery dispute procedure for disputes in a certain forum does not deprive this Court of jurisdiction to address the issues here on its own terms. And transfer may be warranted when the issuing court "has already ruled on issues presented by the motion," Fed. R. Civ. P. 45(f) advisory committee's note, and the Oregon court has ruled on none. More to the point, the Oregon court knows this Motion is pending and expects this Court to decide it. In denying without prejudice DaBella's motion to extend discovery, it ruled that, after it decides the motions pending before it "and/or after the U.S. District Court in the Eastern District of Pennsylvania has ruled on the pending motion to quash," either party may

move to reopen discovery. *Weingrad* ECF No. 90. Transfer would not protect the issuing court's management of the case. It would undo the sequence that court set.

*Second*, DaBella says the Oregon court is better placed to judge relevance. ECF 5 at 13-14. That is the assumption the advisory committee rejected, and DaBella's authorities do not support DaBella's proposition. *Patriot National Insurance Group v. Oriska Insurance Co.*, 973 F. Supp. 2d 173 (N.D.N.Y. 2013), was decided in September 2013, before Rule 45(f) and its exceptional-circumstances standard took effect. *P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452 (7th Cir. 2017), dismissed appeals for lack of jurisdiction and did not decide whether transfer was proper. The relevance question is also not difficult. It requires comparing four requests about a doorstep visit with a case about telephone calls. The one subpoena ruling the Oregon court has made went *against* DaBella, quashing most of its subpoena to Plaintiff's employer, which also sought video of the Plaintiff working, which it contended would show him visiting a website, as "an improper fishing expedition." *Weingrad* ECF No. 77 at 6. And discovery there closed on October 30, 2026, ECF 5-7 ¶ 3, so no ongoing discovery program exists for a ruling here to disrupt.

*Third*, DaBella argues that the Oregon court will appoint class counsel, and it again invokes *Wilson v. Freeway*, an unrelated case before a different judge. ECF 5 at 14. DaBella does not explain what a video of a sidewalk encounter involving counsel has to do with Rule 23(g). All this argument confirms is that the Subpoena is aimed at counsel, rather than at the merits.

*Fourth*, DaBella notes that Mr. Perrong litigates in Oregon and was there on October 20, 2025. *Id.* That's unsurprising: federal litigators often travel to litigate. Rule 45 protects a nonparty where he "resides, is employed, or regularly transacts business in person," Fed. R. Civ. P. 45(c)(2)(A), and DaBella chose to command compliance here. If appearing as counsel in the

issuing court were an exceptional circumstance, every subpoena to out-of-state counsel would be transferred. That is not the standard.

## II. THE OPPOSITION CONFIRMS THAT THE VIDEO IS IRRELEVANT

### A. DaBella Identifies No Claim or Defense

The party issuing a subpoena "must first show that its requests are relevant to its claims or defenses." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). DaBella does not attempt that showing. It argues that the video is "relevant to representations made by Plaintiff in the underlying action." ECF 5 at 16 (capitalization altered). That is not the test. Rule 26(b)(1) limits discovery to matter "relevant to any party's claim or defense," and the 2015 amendments deleted the provision that once allowed discovery relevant to the "subject matter" of the action. Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Nor do the "representations" DaBella cites put the video in play. In the class certification brief DaBella cites, Plaintiff referred to the visit for one point: DaBella's employees came to his home to solicit him seven months after he sued, which bears on DaBella's internal do-not-contact practices. *Weingrad* ECF No. 51 at 28, 31. DaBella admits that fact. Its employees "approached his front door" while canvassing, ECF 5 at 16, and asked whether he wanted work done on his house, ECF 5-1 at 3 (Weingrad Dep. 15:7-10). What happened afterward between counsel and those employees down the street is not something Plaintiff has asked the Oregon court to decide. And even marginal relevance would not be enough. Discovery must also be proportional, and DaBella must avoid burdening a nonparty. Fed. R. Civ. P. 26(b)(1), 45(d)(1). A second subpoena for a recording of an event DaBella's own employees attended, satisfies neither rule.

**B. DaBella's Concessions Dispose of the "Trespass" Theory**

At the conference, DaBella said the video would show whether its employees were "trespassed." ECF 1-2 ¶ 6. The opening memorandum explained that a video of an encounter that ended before the police arrived cannot show what the police did. ECF 1-1 at 10-11. DaBella now concedes the premise. It rejects body camera footage as a substitute because "the interaction with DABELLA EXTERIORS LLC occurred prior to the police arriving at the scene." ECF 5 at 19. By the same reasoning, the video cannot show whether the officers trespassed anyone because it is not the officers' video. It seeks a video that occurred *prior* to the police's trespass.

DaBella's argument that its employees "could not have been trespassed" because they had already left the property, *id.* at 17, misreads that word. Plaintiff explained what he meant in a June 29, 2026 interrogatory answer, that the responding officers verbally warned DaBella's agents that neither they nor DaBella should return to Plaintiff's property. He testified that he heard the officers say "trespassing." ECF 5-1 at 11 (Weingrad Dep. 23:19-23). Officers can give that warning wherever they find the person. Whether they gave it is recorded in the police report, which DaBella obtained through a public records request. ECF 5-7 ¶ 6. DaBella did not file the report and does not tell the Court what it says, because it confirms what DaBella denies, that they "JUST WANT THEM TRESPASSED." (Ex. A).

**C. What Remains Is an Investigation of Opposing Counsel**

With the trespass theory gone, DaBella's remaining purposes are the three described above, along with testing "whether counsel's statements in the letter as to threatened violence . . . were accurate." ECF 5 at 17-18. But DaBella identifies no pleading, motion, or declaration in the Oregon action alleging that its employees threatened anyone. The only sources it cites are a conferral letter and a 911 call. Whether counsel's statements about an unrelated matter is not an issue in a case

about telemarketing calls, and "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978). The Oregon court has already found that another DaBella subpoena in this case "tips too far into harassment." *Weingrad* ECF No. 77 at 6. This Subpoena goes further, because it targets an individual who is counsel. DaBella's other arguments do not change the analysis.

*Waiver.* DaBella again argues that co-counsel's October 2025 letter "waived" any relevance objection and again cites no authority. ECF 5 at 17. A letter seeking an adversary's position on possible motions does not enlarge Rule 26(b)(1). No sanctions motion followed. ECF 1-2 ¶ 8. Plaintiff never noticed the employees' depositions. That Mr. Perrong asked DaBella to produce police records it had already obtained and was using in these proceedings concedes nothing about a claim or defense. Nor does co-counsel's statement that DaBella was "free" to subpoena the Firm, which would "respond accordingly." ECF 5-4 at 2. That was not a promise to produce, and the Firm and Mr. Perrong have responded as Rule 45 permits.

*Sword and shield.* The label comes from privilege waiver doctrine, which applies when a party relies on protected material to prove a claim or defense. *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Plaintiff has not offered the video, described it to the Oregon court, or relied on it for anything. He does not intend to and does not possess it. So, it is abundantly evident that the video is not being used to attempt to prove a claim or defense.

*"Inconsistencies."* DaBella lists four supposed inconsistencies among co-counsel's letter, Plaintiff's deposition a year later, and the 911 call. ECF 5 at 20-22. None concerns an element of a claim or defense. Two of the four, who answered the door and what the police did, concern events that, by DaBella's account the video does not capture. Counsel's letter is not testimony, and its author is not a witness. Plaintiff testified that he did not see the encounter, ECF 5-1 at 5-6, so the

video cannot impeach him about it. And DaBella's question why Mr. Perrong would "not willingly and voluntarily release the video," ECF 5 at 17, inverts the burden. A nonparty need not justify declining to hand irrelevant material to a litigation adversary.

## III. DABELLA CANNOT JUSTIFY DISCOVERY FROM OPPOSING COUNSEL

DaBella argues that *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), does not apply because Mr. Perrong stated in the earlier proceeding that any recording was not made at the Firm's direction or for the representation. ECF 5 at 23 (citing MC-88 ECF 1-2 ¶ 10). There is no inconsistency. The Firm's files do not contain the recording, which is why the Firm had nothing to produce. That does not change who Mr. Perrong is or why DaBella subpoenaed him. *Shelton* protects the adversary process from discovery aimed at the lawyers conducting it, and its concerns are at their height when the stated goal is to test opposing counsel's truthfulness and motives. DaBella also argues the point both ways. In the same brief, it says Mr. Perrong approached its employees "as counsel for LEON WEINGRAD in the Underlying Action." ECF 5 at 15. The opening memorandum explained why the Subpoena fails under either characterization, ECF 1-1 at 12-13, and DaBella does not respond to this analysis.

DaBella's answer on the merits is that the video is not privileged. ECF 5 at 24. But neither Mr. Perrong nor Perrong Law have ever claimed that a recording of a public encounter is privileged. The privilege and work product objections go to Request No. 4 and the instructions. Under *Shelton*, "nonprivileged" is necessary but not sufficient. DaBella must also show that no other means exist and that the information is crucial. *United States v. Kindred Healthcare, Inc.*, No. CV 16-00683-KSM, 2024 WL 5410444, at *6 (E.D. Pa. Nov. 13, 2024). It shows neither. DaBella also recites privilege objections made at Plaintiff's deposition. ECF 5 at 9-10. Those

objections protected Plaintiff's communications with his lawyers, were made in the Oregon action, and are not before this Court. They do not make a video relevant.

Other means exist, and DaBella admits it. One questions why DaBella has not pursued these means. Its employees were the other half of the conversation, and DaBella concedes they "can testify." ECF 5 at 19. Yet DaBella submits no declaration from either employee describing what happened or allegedly describing some untruthfulness of what was alleged. Its assertion that "there was in fact no threat of violence," *id.* at 22, is argument of counsel, unsupported by the two people who could say so. It argues only that video is the "best evidence." *Id.* at 19. That is not the *Shelton* standard, and the best evidence of an irrelevant fact is still irrelevant. DaBella's quotation from *Gelazela*, that video was "the best evidence of indifference," assumes what DaBella has not shown, that what the video depicts is an issue in the case and is relevant, as it was there. DaBella likewise re-cites *Musko* and *Johnston*, ECF 5 at 18, without answering the showing that both involved counsel who *witnessed the relevant transactions in suit*. ECF 1-1 at 13-14.

As for what the police did, DaBella has the report and the 911 audio. Its complaint that a records manager denied a public records request for body camera footage, ECF 5-7 ¶ 7, shows only that it asked under the wrong law. Oregon's Public Records Law limits what the public may obtain *on request*. *See* Or. Rev. Stat. § 192.345(40). It does not limit a subpoena. That raises the question why DaBella, which has twice subpoenaed Plaintiff's counsel and once subpoenaed his employer, in a subpoena the Oregon court found "tip[ped] too far into harassment," Weingrad ECF No. 77 at 6, never subpoenaed the police. DaBella has not asked the people who hold the records that would answer its question. It has asked, twice, the lawyer who is suing it.

Nor is the video crucial. DaBella learned of it on October 20, 2025, when, by its own account, Mr. Perrong approached its employees "holding a phone in one hand and videotaping."

ECF 5 at 15. It issued this Subpoena a year later, four days before discovery closed. ECF 5-7 ¶ 3. A party does not wait until the last week of discovery to seek evidence that is crucial to its case. And DaBella's brief never says what it would do with the video in the TCPA action.

Finally, DaBella repeats that it is "entitled" to the video as a matter of "ethical and professional duty." ECF 5 at 16. For the second time, it cites no rule. None exists. The Rules of Professional Conduct are not discovery devices, and their purpose "can be subverted when they are invoked by opposing parties as procedural weapons." Pa. R. Prof'l Conduct, Scope ¶ 19. DaBella also does not need a video to learn what its own employees said and heard.

## IV. DABELLA'S REMAINING ARGUMENTS FAIL

*Time to comply.* DaBella does not defend four days as reasonable. It argues that Mr. Perrong knew DaBella wanted the video. ECF 5 at 24. Rule 45(d)(3)(A)(i) asks what time the subpoena allows, not how long the recipient has known of the issuing party's intent. The short return date was DaBella's doing. It set compliance for the last day of discovery, and its offer to extend depended on a discovery extension that the Oregon court then denied without prejudice. ECF 5-7 ¶ 3; ECF 5 at 25. DaBella now says it "would agree to a reasonable extension." ECF 5 at 25. More time cannot cure a facially defective subpoena that seeks irrelevant material from opposing counsel.

*Request No. 4, the instructions, and "you."* DaBella says Mr. Perrong did not confer on these points. ECF 5 at 25. He conferred about the Subpoena and asked DaBella to withdraw it. ECF 1-2 ¶ 6. DaBella refused, and its brief defends the requests without offering to narrow anything. On the merits, DaBella says Request No. 4 "simply requests the factual evidence to support" counsel's allegations. ECF 5 at 25. That description confirms the problem. The request is a contention interrogatory to opposing counsel in the form of a subpoena, and a privilege log

cannot cure a request whose response would itself reveal counsel's selection of evidence. *Sporck v. Peil*, 759 F.2d 312, 315-17 (3d Cir. 1985). DaBella does not defend the definition of "you" or Instruction No. 1's demand for "information within your knowledge."

*Service.* DaBella asks the Court, in a brief, to deem this Motion an acknowledgment of service or to authorize email service. ECF 5 at 29. A request for an order must be made by motion. Fed. R. Civ. P. 7(b)(1). Rule 45(b)(1) requires delivery to the named person. *Hamilton v. Radnor Twp.*, 662 F. Supp. 3d 536, 541 (E.D. Pa. 2023). The only case DaBella cites concerned, by its own description, service on a "defendant." ECF 5 at 29.

DaBella's position is also inconsistent. It tells the Court that Mr. Perrong seeks "to quash a subpoena served by email," *id.* at 14, while asking the Court to authorize email service because he has not been served. And its showing of "avoidance" consists of attempts made over less than 24 hours on October 27 and 28, 2026. ECF 5-6 at 3-5. More fundamentally, service is beside the point. Mr. Perrong filed this Motion so the Court could decide the merits, ECF 1-1 at 17, and the defects in the Subpoena would remain however it was delivered. So, the court need not address the service issues if it holds that the subpoena should be quashed.

## CONCLUSION

The Court should decline to transfer the Motion, grant it, and quash the Subpoena in its entirety. As requested in the Motion, the Court should also bar DaBella from issuing further subpoenas for these materials without leave of Court. ECF 1-1 at 17-18.

Dated: November 16, 2026

Respectfully submitted,

/s/ Andrew Roman Perrong
Andrew Roman Perrong (PA Bar No. 333687)
1669 Edgewood Rd., Suite 218

Yardley, PA 19067
Telephone: 215-225-5529
Facsimile: 888-329-0305
a@perronglaw.com
*Non-Party, pro se*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, I caused the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Andrew Roman Perrong
Andrew Roman Perrong